IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

TRIOAK BAR D, LLC, TINA KASIKI,　§
ERNIE KASIKI,  FLYING BAR D　　　§
RANCH, LTD.,　　　　　　　　　　　§　　　　　SA-24-CV-00981-OLG
　　　　　　　　　　　　　　　　　　§
　　　　　　*Plaintiffs,*　　　　　　　§
　　　　　　　　　　　　　　　　　　§
vs.　　　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　§
GUADALUPE COUNTY, TEXAS, KYLE　§
KUTSCHER, COUNTY JUDGE; GREG　§
SEIDENBERGER, COUNTY　　　　　　§
COMMISSIONER; DREW ENGELKE,　　§
COUNTY COMMISSIONER; AND　　　　§
STEPHEN GERMANN, COUNTY　　　　§
COMMISSIONER;　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　§
　　　　　　*Defendants.*　　　　　　§

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Plaintiffs' Application for Preliminary Injunction [#14], which was referred to the undersigned for a report and recommendation.  The undersigned held a live evidentiary hearing on the motion on February 4, 2025, at which counsel for Plaintiffs and Defendants appeared and presented witness testimony and other evidence.  The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is recommended that Plaintiffs' application be denied.

**I.  Background**

This case arises out of the denial of three variance requests pertaining to the proposed development of a residential subdivision.  Plaintiff TriOak Bar D, LLC, is a real estate developer

under contract to purchase 318 acres of land located in Guadalupe County from Plaintiffs Tina Kasiki and Ernie Kasiki and their entity, Flying Bar D Ranch (also a Plaintiff).  Guadalupe County has subdivision regulations requiring all lots to have a 20-foot setback from a County right-of-way and a 10-foot side setback from adjacent lots.  (Pl. Ex. 12, § IX.B.1., at 21.)  The County also requires a minimum lot frontage of at least 80 feet on new proposed local roads as a condition of street acceptance for County maintenance.  (*Id.* § X.A., at 30.)  TriOak's proposed subdivision does not comply with these regulations and therefore requires several variances before a plat application can be submitted for approval.  TriOak wishes to develop its residential lots with only a 10-foot front setback and a 5-foot side setback, as well as modifications to the lot-frontage requirements for street acceptance. (Pl. Ex. 15, Variance Applications.)  Plaintiffs[1] submitted their variance requests on May 6, 2024, and the Guadalupe County Commissioners Court denied the variances on July 23, 2024.  (*Id.*; Pl. Ex. 21, Meeting Minutes, at 3–4.)

Plaintiffs filed this suit on August 30, 2024, against Guadalupe County and the four members of the Guadalupe County Commissioners Court who voted unanimously to deny the three variances—County Judge Kyle Kutscher and County Commissioners Greg Seidenberger, Drew Engelke, and Stephen Germann.  Plaintiffs allege that Guadalupe County's subdivision regulations, in imposing lot-frontage and setback requirements, violate the Texas Local Government Code's prohibition on subdivision regulations that restrict "the size of a building that can be constructed on a particular tract of land."  Tex. Loc. Gov't Code § 232.101(b)(3).

Plaintiffs' Amended Complaint, which is the current live pleading, claims that Defendants' denial of their variance requests violates the Due Process and Equal Protection Clauses of the

---

[1]  Although TriOak submitted the variance requests, the property owner on the variance application is listed as Flying Bar D Ranch, the Kasikis' entity.

United States and Texas Constitutions and constitutes an unconstitutional regulatory taking. Plaintiffs believe that the Guadalupe County Commissioners Court denied the variances because they oppose the density proposed by TriOak's development.  By this suit, Plaintiffs seek "mandamus relief," injunctive relief, declaratory relief, and damages.  Plaintiffs specifically ask the Court to find that the denial of the variance requests was contrary to law and to order the Guadalupe County Commissioners Court to approve their variance applications (and ultimately their completed plat application) so that they can develop the proposed subdivision as planned.

In response to the filing of Plaintiffs' Amended Complaint, Defendants filed a motion to dismiss, and Plaintiffs filed the application for a temporary restraining order ("TRO") and a preliminary injunction currently before the undersigned.  The undersigned held a status conference with the parties after the motion to dismiss and application for injunctive relief were referred, at which Plaintiffs agreed to withdraw their request for a TRO.  The undersigned thereafter set a preliminary-injunction hearing and issued a report and recommendation on the motion to dismiss, recommending that the District Court deny the motion [#20].

Plaintiffs' motion for a preliminary injunction seeks an order from the Court restraining Defendants and other employees of Guadalupe County from "illegally applying their building requirements" to prevent Plaintiffs from developing the property at issue and ordering the County to approve the applications.  The parties filed both pre- and post-hearing briefs on the request for an injunction [#23, #26, #27].  Defendants also filed objections to deposition excerpts proffered by Plaintiffs at the hearing [#28].

## II.  Legal Standard Governing Request for Mandatory Injunction

Plaintiffs' motion for preliminary injunction asks the Court to order a county judge and county commissioners to approve Plaintiffs' variance applications and forthcoming plat

application for its proposed subdivision.  A request for an injunction that compels affirmative action, rather than sustains the status quo, is often referred to as a "mandatory injunction."  *See* Black's Law Dictionary 800 (8th ed. 2004) (defining "prohibitory injunction" as an injunction that "forbids or restrains an act," and "mandatory injunction" as an injunction that "orders an affirmative act or mandates a specified course of conduct").

A plaintiff requesting a prohibitive preliminary injunction must establish the following four factors to be entitled to the requested injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) the injunction will not disserve the public interest. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997).  A prohibitive preliminary injunction is an "extraordinary remedy" that should only be granted if the moving party has clearly carried the burden of persuasion on all factors. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

A request for a mandatory injunction imposes an even higher burden on Plaintiffs; Plaintiffs must "clearly" show they are entitled to relief or that "extreme or very serious damage" will result from the denial of the injunction. *Phillips v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997) (internal quotation and citation omitted).  In the Fifth Circuit, "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).  To obtain a mandatory injunction, Plaintiffs must show "clear entitlement to the relief [they seek] under the facts and the law." *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990).  Ultimately, "[t]he

decision to grant or deny a preliminary injunction lies within the discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion." *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).

The mandatory injunction requested here by Plaintiffs is not a mere request for preliminary relief. Plaintiffs are asking the Court to issue the ultimate injunctive relief they seek through this suit, leaving only the issue of damages for adjudication. "When a district court's order, albeit in the form of a TRO or preliminary injunction, will finally dispose of the matter in dispute, it is not sufficient for the order to be based on a likelihood of success or balance of hardships . . . ." *Arbor Bend Villas Hous., L.P. v. Tarrant Cnty. Hous. Fin. Corp.*, No. CIV.A. 4:02CV478Y, 2002 WL 1285564, at *3 (N.D. Tex. June 6, 2002) (*quoting Romer v. Green Point Savings Bank*, 27 F.3d 12, 16 (2d Cir. 1994)). Rather, "the district court's decision must be correct" based on a "heightened showing" of clear entitlement to relief, particularly where, as here, the ordered relief "could not . . . be undone, even if the non-moving party later prevails at trial." *Id.* (quoting *Romer*, 27 F.3d at 16; *Phillips*, 118 F.3d at 134.

### III.  Jurisdictional Concerns

Before addressing whether Plaintiffs are able to satisfy this heightened burden of proof to obtain the mandatory injunction they seek, the undersigned will also briefly address jurisdictional concerns regarding the injunctive relief sought by this suit and through Plaintiffs' preliminary injunction motion. Plaintiffs' Amended Complaint lists as a cause of action "Mandamus Relief," by which Plaintiffs seek a "writ of mandamus" ordering Defendants to approve Plaintiffs' variance applications. (Am. Compl. [#10], at ¶ 57–60.) This requested relief is identical to the relief sought in the preliminary injunction application and the section of Plaintiffs' pleading requesting injunctive relief.

Federal Rule of Civil Procedure 81(b) formally abolished federal writs of mandamus. However, the All Writs Act confers on federal courts the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. "[A] federal court must have an independent basis for subject matter jurisdiction for a writ of mandamus to be issued pursuant to 28 U.S.C. § 1651(a)." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987). A federal court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee *of the United States or any agency thereof* to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added). However, a federal court "lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." *Moye v. Clerk, DeKalb Cnty. Superior Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973).

Although Plaintiffs assert a cause of action of "mandamus" in their Amended Complaint, they do not solely seek mandamus relief through this case, as they also request damages. Additionally, Plaintiffs plead additional causes of action aside from mandamus relief. They plead both federal and Texas constitutional claims, and plead subject matter jurisdiction based on federal question jurisdiction, 28 U.S.C. § 1331, with supplemental jurisdiction over the state-law claims, *id.* § 1367(a). Accordingly, subject matter jurisdiction over this case as a whole is not a concern. Yet, it is unclear whether this Court has the power to issue the requested mandamus relief against various county officers in this federal-question case (or if it does that it should).

"[W]hen a court sits in diversity, it acts as any other court of the state, and can issue writs that the state courts are empowered to grant." *Vary v. City of Cleveland*, 206 F. Supp. 3d 1273, 1277 (N.D. Ohio 2016)). Yet this Court is not sitting in diversity jurisdiction. Jurisdiction over Plaintiffs' state-law request for mandamus is based on supplemental jurisdiction, which is not

mandatory. The supplemental jurisdiction statute provides that a court may decline to exercise supplemental jurisdiction over a state-law claim if: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Federal courts "routinely decline" to exercise supplemental jurisdiction over state claims requesting a writ of mandamus, as such claims raise "serious considerations regarding comity and federalism." *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1184 (E.D. Cal. 2013). "Where a state law claim is inextricably tied to a request for a writ of mandamus, a federal district court appropriately declines supplemental jurisdiction." *Id.* at 1184–85.

Federal courts have an obligation to raise issues regarding subject matter jurisdiction sua sponte. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 575 (5th Cir. 2003). Accordingly, though not raised by the parties, given the foregoing, the undersigned is skeptical of this Court exercising supplemental jurisdiction over a request for a writ of mandamus under Texas law. Asking a federal court to issue a writ of mandamus against state officers necessarily implicates the very federalism concerns underlying the general rule that federal courts are not authorized to compel state officers in the performance of their duties. *See Moye*, 474 F.2d at 1276; *see also In re Whiteford*, No. 13-1351, 2013 WL 979413, at *1 (3d Cir. Mar. 14, 2013). This same concern extends to the issue currently before the Court—whether to grant Plaintiffs a mandatory preliminary injunction that is identical to the mandamus relief they seek in their Amended Complaint.

Moreover, setting aside the question of whether the Court can or should exercise supplemental jurisdiction over the mandamus relief at issue, it is not clear that the requirements

for the issuance of a writ of mandamus under Texas law would even be satisfied here. Under Texas law, a party is entitled to mandamus relief "to compel a public official to perform a ministerial act." *In re City of Lancaster*, 220 S.W.3d 212, 215 (Tex. App.—Dallas 2007), *supplemented*, 228 S.W.3d 437 (Tex. App.—Dallas 2007). "For mandamus purposes, ministerial acts are those for which 'the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Id.* (quoting *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004) (additional citation omitted)). "If the public official must obey an order, without having any choice in complying, the act is ministerial"; "[i]f an action involves personal deliberation, decision, and judgment, however, it is discretionary." *Ballantyne*, 144 S.W.3d at 425. A Texas district court "may not use its mandamus jurisdiction to substitute its discretion for that of the public official." *Lancaster*, 220 S.W.3d at 215 (citing *Vondy v. Comm'rs Ct. of Uvalde Cnty.*, 620 S.W.2d 104, 109 (Tex. 1981)).

Again, Plaintiffs are requesting mandamus relief (or a mandatory injunction) to require the Guadalupe County Commissioners Court to approve Plaintiffs' variance applications and ultimately its plat application for the proposed subdivision. A Texas Appeals Court denied a request for mandamus relief in a similar case, finding that at the time of the denial of the plat application, no ministerial duty existed for the town to approve the plat because the plat did not satisfy all applicable regulations. *Town of Annetta S. v. Seadrift Dev., L.P.*, 446 S.W.3d 823, 832–33 (Tex. App.—Fort Worth 2014, reh'g overruled) ("Seadrift has not cited, and we have not located, any authority for the proposition that a mandamus will issue against a county official based on allegations that a ministerial duty arose *after* the county official acted or failed to act.") (emphasis in original).

The same reasoning applies here.  At the time Plaintiffs submitted their variance applications, the proposed setbacks and lot frontages did not comply with the Guadalupe County subdivision regulations.  Neither the Texas Supreme Court nor any Texas appellate court has yet declared those regulations to be a violation of the Texas Local Government Code.  Therefore, when Plaintiffs submitted their request for a variance, no ministerial duty existed requiring Defendants to approve the variances or to approve a plat application that did not comply with the County's current subdivision rules.

A request for a variance is factually distinguishable from a case in which a developer submits a completed plat application that has complied with all existing governing requirements. The decision whether to grant or deny a variance is at the "complete discretion" of the Guadalupe County Commissioners Court.  (Pl. Ex. 12, § B.2., at 10.)  A governmental unit only has a "ministerial duty" to approve a plat application "once the relevant governmental unit determines that a plat conforms to applicable regulations." *Schroeder v. Escalera Ranch Owners' Ass'n*, 646 S.W.3d 329, 332 (Tex. 2022).  This has not yet occurred here.

In sum, it is unlikely a Texas court would issue the mandamus relief requested by Plaintiffs. And it is questionable whether this Court should even exercise supplemental jurisdiction over the mandamus claim included in Plaintiffs' Amended Complaint in light of federalism concerns. Against this backdrop, the undersigned has serious concerns about even entertaining Plaintiffs' request for a mandatory injunction, which is identical to the mandamus relief pleaded in the Amended Complaint.  Nonetheless, for the benefit of the District Court, which is ultimately presiding over this case, the undersigned will briefly address the relevant evidence presented at the preliminary-injunction hearing and the question of whether Plaintiffs have clearly demonstrated

entitlement to relief under their constitutional claims and the heightened standard for a mandatory injunction.

## IV.  Analysis of Request for Mandatory Injunction

For Plaintiffs to be entitled to a mandatory injunction, they must show a clear entitlement to relief, as well as the other three requirements for a prohibitive injunction—irreparable injury, that the balance of harms is in their favor, and that the requested injunction will not disserve the public interest.  *Miss. Power & Light Co.*, 760 F.2d at 621.   Plaintiffs cannot prevail on their motion because they have not carried their burden to show a clear entitlement to the relief they seek and cannot show irreparable harm.

**A.**    **Plaintiffs have not shown a substantial likelihood of success or clear entitlement to relief.**

Aside from the request for mandamus relief, Plaintiffs' Amended Complaint asserts causes of action for violation of equal protection, due process, and a regulatory taking under the United States and Texas Constitutions.[2]  Plaintiffs have not shown a substantial likelihood of success on the merits of their constitutional claims or a clear entitlement to the extraordinary relief they seek.

**Equal Protection.**  Texas courts have recognized that the equal-protection provision of the federal constitution and the Texas Constitution are coextensive and therefore apply the same

---

[2] Plaintiffs' Amended Complaint lists a separate cause of action for "Declaratory Relief," which states that they seek a declaratory judgment pursuant to the Federal Declaratory Judgment Act.  (Am. Compl. [#10], at ¶¶ 65–68.)  "The federal Declaratory Judgment Act is merely a procedural device that creates no standalone cause of action."  *Mid-Am. Supply Corp. v. Truist Bank*, 660 F. Supp. 3d 594, 601 (E.D. Tex. 2023).  "Rather, the viability of a party's request for declaratory relief is dependent on that party's ability to assert a viable substantive cause of action."  *Id.* (citing *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990)).  Thus, aside from the request for a writ of mandamus, Plaintiffs' constitutional claims are the only substantive causes of action before the Court.

approach in analyzing these claims. *Alobaidi v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 243 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The undersigned therefore applies federal constitutional law in evaluating Plaintiffs' equal protection claim.

The Equal Protection Clause of the Fifth Amendment serves "as a shield against arbitrary classifications." *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 598 (2008). "But not all classifications are subject to the same degree of judicial scrutiny." *DM Arbor Ct., Ltd. v. City of Houston*, No. CV H-18-1884, 2021 WL 4926015, at *29 (S.D. Tex. Oct. 21, 2021). In the absence of a "classification affecting fundamental personal rights or based upon inherently suspect distinctions such as race, religion, or alienage," classifications or unequal treatment are "subject to the same rational basis analysis utilized in due process claims." *Jackson Ct. Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1079 (5th Cir. 1989).

Plaintiffs' Amended Complaint alleges that the denial of Plaintiffs' variance requests was a denial of equal protection because Guadalupe County denied Plaintiffs' variance requests based on the pretextual and invalid reason of preventing affordable housing opportunities. (Am. Compl. [#10], at ¶¶ 51–52.) "[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that [it] has been irrationally singled out as a so-called 'class of one.'" *Engquist*, 553 U.S. at 601. In other words, "when it appears that the government is singling out an individual, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a rational basis for the difference in treatment." *Id.* at 602 (internal quotation and citation omitted). To prove its "class of one claim," Plaintiffs must show that (1) they have "been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Although Plaintiffs' equal-protection claim is plausible on the pleadings, Plaintiffs did not produce any evidence at the preliminary-injunction hearing of any other subdivision development subject to the exclusive platting authority of the Guadalupe County Commissioners Court that has been approved, despite proposing setbacks or lot frontages under the minimum requirements set forth in the County's subdivision regulations. David Cupit, the Civil Engineer hired by TriOak to help develop the subdivision plat application, testified at the hearing that there are many other nearby subdivisions with similar proposed setbacks and lot frontages in Guadalupe County, but he conceded that these subdivisions were either within the corporate limits of the City of Seguin or located with the City of Seguin's extraterritorial jurisdiction ("ETJ") (and therefore subject to different requirements). Additionally, Joshua Majors, who worked for TriOak and submitted the variance applications on its behalf, testified generally that the majority of subdivisions in the State of Texas have five-foot setbacks and under 50-foot lot frontages. He did not testify, however, that any of these subdivisions were subject to the Guadalupe County subdivision regulations. Thus, Plaintiffs "have not satisfied their burden of pointing to similarly situated comparators" subject to the same subdivision regulations who applied for variances with the Guadalupe County Commissioners Court and were granted them. *See Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 234 (5th Cir. 2012). Accordingly, Plaintiffs have not established that they are likely to prevail on their equal protection claim on the current evidentiary record.

**Due Process.** The due process protections afforded by the federal and Texas Constitutions are also for the most part coextensive. *See Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 86 (Tex. 2015). Plaintiffs claim that Defendants deprived them of due process by denying their variance applications. (Am. Compl. [#10], at ¶ 48.) To assert a valid due process claim, a party must have a constitutionally protected liberty or property interest. *Klumb v. Hous. Mun.*

12

*Emps. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015); *see also Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992) (identifying "threshold issue [of] whether [plaintiff] held any constitutionally-protected property right" before considering due-process claim).

Plaintiffs contend that they have a constitutionally protected property right to a variance approval because the Commissioners Court had a ministerial and non-discretionary duty to approve their variances and ultimately their plat application.  (Am. Compl. [#10], at ¶ 48.) Plaintiffs have not provided the Court with any authority standing for the proposition that a landowner has a constitutionally protected property interest in a variance.  As noted, variance requests are granted at the discretion of the Guadalupe County Commissioners Court.  (Pl. Ex. 12, § B.2., at 10.)  "[D]iscretionary statutes do not give rise to constitutionally-protected property interests."  *Horton v. City of Smithville*, 117 Fed. Appx. 345, 348–49 (5th Cir. 2004).  *See also Guth v. Wolfe for City of Hempstead, Tex.*, No. 4:17-CV-01100, 2017 WL 4457587, at *7 (S.D. Tex. Sept. 15, 2017), *report and recommendation adopted sub nom. Guth v. Wolf*, No. 4:17-CV-1100, 2017 WL 4417709 (S.D. Tex. Oct. 3, 2017) (finding no property interest in building and utility permits where permitting statute placed no limits on licensing discretion).

Furthermore, as noted *supra* with respect to the undersigned's concerns about Plaintiffs' request for mandamus relief, a Texas appeals court expressly found that there was no ministerial duty requiring a town to approve a plat application that did not satisfy all applicable regulations. *Seadrift Dev.*, 446 S.W.3d at 832–33.  Thus, even if this Court were to ultimately find that the Guadalupe County subdivision regulations exceed the County's authority and violate the Texas Local Government Code, this does not establish that at the time of the submission of the variance requests, Plaintiffs had a constitutionally protected property interest in the variances being granted.

There was no ministerial duty of the Commissioners Court to approve a plat application if the application did not fully comply with their governing regulations. *See id.*

Plaintiffs argue that this case is analogous to a recent decision from the San Antonio Division of the Western District of Texas, in which Judge Biery found a protected property interest in a plat application for a residential subdivision development. *See Meritage Homes, LLC v. City of Cibolo*, No. SA-21-CV-755-FB, 2024 WL 4796233, at *8 (W.D. Tex. Mar. 31, 2024). Even assuming it is possible to have a constitutionally protected property interest in a permit application, the *Meritage* case is distinct in an essential regard. In *Meritage*, the City of Cibolo approved the final plat application (which complied completely with governing regulations) but imposed conditions on the approval of sewer line construction and limitations on the use of pump and haul. *Id.* at *5. Judge Biery found that these conditions were unauthorized because the City did not have any provisions in its subdivision ordinances regulating the provision of sewer service outside of its corporate limits. *Id.* Because the plat application conformed to the City's requirements and regulations, and there was no regulatory authority for imposing the sewage requirements, Judge Biery concluded that the City violated its ministerial duty to approve the plat in compliance with its own ordinances. *Id.* at *8. Here, Plaintiffs concede they did not submit a fully compliant plat application, even while they argue that the scope of Guadalupe County's subdivision regulations is illegal.

The same critical distinction exists between this case and another case cited by Plaintiffs, *WBW Single Development Group, LLC—Series 129 v. Bell County, Texas*, No. 24DCV-347146 (Bell County, 146th Dist.), and appended to one of their briefs. (*See* Final Judgment [#23-4], at 1–4.) In that case, the Texas district court concluded that an interlocal agreement governing a proposed subdivision did not contain any express reservation by Bell County of the right to

withhold street acceptance where the developer proposed streets in full compliance with governing permitting requirements. The court therefore found that the County lacked discretion to reject the maintenance of subdivision streets and drainage and issued a writ of mandamus requiring the County to approve the plaintiff's request for street acceptance. Plaintiffs have not made a similar showing here.

In sum, Plaintiffs have not established that they have a constitutionally protected property interest in the granting of their variance application. Therefore, they have not satisfied their burden to prove their likelihood of success on the merits of their due process claim or clear entitlement to the mandatory injunction they seek.

**Regulatory Taking.** Plaintiffs' final constitutional claim alleges that the denial of their variance application constitutes an unconstitutional regulatory taking because it deprives them of their reasonable investment-backed expectations in the use of the property at issue. (Am. Compl. [#10], at ¶ 55.) Plaintiffs' federal and Texas takings claims are also analyzed coextensively. *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 644 (Tex. 2013).

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. "[R]egulations that completely deprive an owner of *all* economically beneficial use of her property" constitute a total regulatory taking. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (emphasis in original) (internal quotation and citation omitted). This category is limited to "the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted." *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

A partial regulatory taking, in contrast, occurs where a regulation causes property to lose a substantial portion of its value. The Supreme Court has recognized three factors to determine

whether a regulatory action rises to the level of a partial taking: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Id.* Importantly, even under the *Penn Central* framework, "regulatory restriction on use that does not entirely deprive an owner of property rights may not be a taking." *Horne v. Dep't of Agric.*, 576 U.S. 350, 364 (2015).

The Supreme Court has recognized that a regulatory taking can arise from a permit or variance denial and constitutes a partial taking when it satisfies the *Penn Central* test and diminishes the value of the plaintiff's interests. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 126–27 (1985). Plaintiffs contend that the denial of their variance requests has an extraordinary economic impact on the value of their investment because the setback and lot frontage requirements significantly reduce the number of homes they can build within the subdivision and the marketability of the homes that they can build. David Cupit testified at the Court's preliminary-injunction hearing that there is not a large market in Guadalupe County for smaller homes on larger lots, which would be more expensive to purchase, and that TriOak would lose hundreds of lots in its proposed development if it is unable to obtain the requested variances. And Joel Hale, managing member of TriOak, testified generally that complying with Guadalupe County's subdivision regulations in terms of setback and roadway frontage requirements makes the proposed development economically infeasible.

The testimony at the preliminary-injunction hearing established that only one of the three variances Plaintiffs applied for is really at issue. Plaintiffs have withdrawn their arguments regarding their requested ten-foot front-yard setback variance, as they concede that the Texas Local Government Code expressly grants Guadalupe County with the authority to impose front-

16

yard setbacks. *See* Tex. Loc. Gov't Code § 233.032. And Plaintiffs implied at the hearing, consistent with Cupit's testimony, that TriOak would not need to comply with the lot frontage requirements in Guadalupe County's subdivision regulations (which are a condition of road acceptance) because the municipal utility district ("MUD") developed for the subdivision is going to be responsible for road maintenance and Plaintiffs are not requesting street acceptance into the County's maintenance system. Accordingly, the limited question before the Court is whether the denial of Plaintiffs' request for a variance so that the proposed lots can have a five-foot side setback, rather than a ten-foot side setback, constitutes a regulatory taking.

Plaintiffs have not shown a substantial likelihood of success on this argument or a clear entitlement to relief because they cannot show that the side setback requirement has substantially deprived them of the economic value of their property. The testimony at the preliminary-injunction hearing established that TriOak went under contract to purchase the property at issue in early 2022, at a time when the property was located within the ETJ of the City of Seguin and was governed not by the Guadalupe County subdivision regulations, but instead by an interlocal agreement between the City of Seguin and the County. For over a year, TriOak explored the possibility of entering into a land development agreement with the City of Seguin and Guadalupe County regarding the creation of a MUD and the proposed subdivision without requiring annexation into the City of Seguin and its platting rules. In late 2023, the Texas Legislature enacted a statute allowing landowners to elect to remove themselves from a City's ETJ, and TriOak voluntarily elected to avail itself of this new opportunity in September of that year and to terminate its negotiations with the City of Seguin on its plat application. The Guadalupe County Commissioner's Court rejected TriOak's proposed land development agreement in November

2023 due in part to concerns about the proposed setbacks of the subdivision, which led to the need for a variance.  (Pl. Ex. 11, Meeting Minutes, at 5.)

Had TriOak remained within the City of Seguin's ETJ or applied to be annexed by the City, it would not have been subject to the ten-foot side setback requirement imposed by Guadalupe County's subdivision regulations.  Hale testified at the preliminary-injunction hearing that TriOak could opt back into the ETJ and conceded that this would absolve it of complying with the side setback requirement at issue.  Plaintiffs have not established that they are required to remain within the exclusive platting authority of Guadalupe County or that the denial of a variance, rather than their voluntary decision to remove themselves from the ETJ of the City of Seguin, has caused them to lose their investment-backed expectations in the development of their property.  Accordingly, Plaintiffs have not satisfied their burden to demonstrate they will clearly prevail on their regulatory takings claim at trial.

## B.    Plaintiffs have not shown irreparable harm.

Even if Plaintiffs could show a substantial likelihood of success on the merits of their constitutional claims and a clear entitlement to the mandatory injunctive relief they seek, they have not satisfied their burden to demonstrate irreparable injury.  An irreparable injury is one that is actual and imminent and is permanent or of long duration.  *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987).  "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Broyles v. Texas*, 618 F. Supp. 2d 661, 681 (S.D. Tex. 2009).

Hale testified that the damages caused by the denial of Plaintiffs' variance applications— though complex—are quantifiable, as Plaintiffs have already expended $1.45 million in developing the proposed project and negotiating agreements with first the City of Seguin and then

Guadalupe County over the past three years.  Additionally, there was testimony at the preliminary-injunction hearing regarding the specific number of lots eliminated from the subdivision were Plaintiffs required to comply with County subdivision regulations.  This testimony weighs against issuing the requested mandatory injunction here.

Additionally, as already noted, Plaintiffs do not have to remain within Guadalupe County's exclusive platting jurisdiction.  In fact, TriOak admitted that it is currently in negotiations with the City of Seguin to potentially opt back into the ETJ, where it will not be subject to a ten-foot side setback requirement.  Plaintiffs complain that they invested significant time in developing their plat application with Guadalupe County and that changing course again to opt back into the ETJ will cause them to incur even more delay in the development of their project.

There was also testimony at the preliminary-injunction hearing that the real estate market is uncertain and that TriOak might even face termination of its contract if the plat application is not immediately approved.  But in this case, both the seller and the purchaser (the Kasikis and TriOak) are Plaintiffs to this suit.  The Kasikis and TriOak have already negotiated an extension of the option period on the contract to April 29, 2025.  Although Josh Majors testified at the hearing that the Kasikis were growing frustrated and were not interested in extending their contract with TriOak beyond April, Plaintiffs cannot dispute that this contract and its termination date are wholly within the control of parties on their side of the "v."  Plaintiffs have the ability to work together to extend the option period for the contract even further.  Plaintiffs cannot voluntarily create a situation themselves and then point to that same situation as evidence of irreparable harm.

In sum, alleged harm from delays is at least partially attributable to TriOak, which elected to change course in the middle of negotiations with the City of Seguin to remove itself from the ETJ.  And testimony at the preliminary-injunction hearing established that the option to return to

the ETJ is still on the table.  Plaintiffs have not demonstrated their entitlement to the extraordinary relief of a mandatory preliminary injunction compelling Guadalupe County to approve their requested variances and ultimate plat application.

## V.  Disputed Issues Not Resolved At This Stage

Consistent with the foregoing analysis, the undersigned notes that to resolve Plaintiffs' application for a preliminary injunction, the Court need not resolve the parties' primary dispute as to whether Guadalupe County's subdivision regulations in fact exceed the authority conferred by the Texas Local Government Code.  Accordingly, this recommendation does not discuss all of the authorities cited by the parties that might be relevant to that determination.  *See, e.g.*, *Integrity Group, Inc. v. Medina Cnty. Cmm'rs Ct.*, 21 S.W.3d 307 (Tex. App—San Antonio, 1999) (r'hrg overruled) (holding Medina County Commissioners Court lacked authority to reject plat application because of lot size).

Nor does the Court need to resolve Defendants' objections to the deposition excerpts proffered at the close of the preliminary injunction hearing, as this report and recommendation does not rely on the objected-to portions of the testimony.

## VI.  Conclusion and Recommendation

Having considered Plaintiffs' application, Defendants' response, the parties pre- and post-hearing brief, the testimony at the hearing and the evidentiary record, and the governing law, the undersigned **recommends** that Plaintiffs' Application for Preliminary Injunction [#14] be **DENIED**.

## VII.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a

"filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 10th day of February, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE